# Order

Michigan Supreme Court
Lansing, Michigan

January 15, 2010

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

139201

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

T.J. LEE ROSE,
        Defendant-Appellant.

SC: 139201
COA: 284241
Lenawee CC: 06-012133-FH

_____/

On order of the Court, the application for leave to appeal the May 12, 2009 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

KELLY, C.J. (*dissenting*).

I would grant defendant's application for leave to appeal. I find many aspects of this case troubling. I believe that this Court should reconsider the use of acquitted conduct at sentencing and our decision in *People v Ewing*.[1] Moreover, I am concerned about how the trial judge used a second charge of second-degree criminal sexual conduct, (CSC II), of which defendant was acquitted, in sentencing him.

## I. Facts

Defendant was jury convicted on one count of CSC II, but acquitted of another count of CSC II in regard to the victim's sister. The judge sentenced him at the top of the sentencing guidelines range, resulting in a sentence of 86 to 180 months in prison. The Court of Appeals affirmed the conviction but remanded for resentencing because it concluded that offense variables 7 and 9 had been incorrectly scored. The trial court corrected the scoring of the variables, which lowered the guidelines minimum sentence range to 12 to 30 months. However, the court again sentenced defendant to 86 to 180 months, an upward departure from the guidelines range. In its discussion of why it believed a departure was warranted, the court noted that it had previously found by a preponderance of the evidence that the second act of CSC had occurred. Defendant

_____

[1] 435 Mich 443 (1990).

challenged the use of his acquittal on the second CSC II charge as a violation of his Fifth and Sixth Amendment rights. The Court of Appeals affirmed.

## II. The Use of Acquitted Conduct Generally

### A. Federal Law

In *United States v Watts*,[2] the United States Supreme Court held that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge. To qualify for consideration, the conduct need be proven by only a preponderance of the evidence. *Watts* involved a challenge to the use of acquitted conduct under the Double Jeopardy Clause of the Fifth Amendment. Relying on *Watts*, every federal circuit that has considered the issue since has concluded that the use of acquitted conduct at sentencing is constitutional.[3]

In *United States v White*,[4] the Sixth Circuit, sitting en banc, divided 9-6 on whether the use during sentencing of facts underlying an acquittal constitutes a Sixth Amendment violation. The majority concluded that it does not, under *Booker*, as long as the resulting sentence does not exceed "the statutory ceiling set by the jury's verdict. . . ."[5]

---

[2] 519 US 148 (1997) (per curiam).

[3] *United States v Magallanez*, 408 F3d 672, 684-685 (CA 10, 2005); *United States v Vaughn*, 430 F3d 518, 526 (CA 2, 2005); *United States v Price*, 418 F3d 771, 787-788 (CA 7, 2005); *United States v Ashworth*, 139 Fed Appx 525, 527 (CA 4, 2005) (per curiam); *United States v Hayward*, 177 Fed Appx 214, 215 (CA 3, 2006); *United States v Farias*, 469 F3d 393, 399 (CA 5, 2006); *United States v Gobbi*, 471 F3d 302, 314 (CA 1, 2006). These courts assumed that *Watts* controls the outcome of both Fifth *and* Sixth Amendment challenges to the use of acquitted conduct.

However, in *United States v Booker*, 543 US 220, 240 & n 4 (2005), the United States Supreme Court explicitly limited *Watts*'s reach to the Fifth Amendment double jeopardy question. Although other courts have recognized that *Watts* is not controlling on the Sixth Amendment question, they have nevertheless been influenced by the other courts that erroneously presumed the contrary. See, e.g.*, United States v Dorcely*, 372 US App DC 170, 175 (DC, 2006); *United States v Mercado*, 474 F3d 654, 657 (CA 9, 2007). Only one federal court of appeals has recognized that *Watts* has absolutely *no* bearing on a Sixth Amendment challenge and has addressed the issue absent any reliance on that case. *United States v Duncan*, 400 F3d 1297, 1304-1305 & n 7 (CA 11, 2005).

[4] 551 F3d 381 (CA 6, 2008) (en banc).

[5] *Id.* at 385.

The dissenting opinion in *White* undertook a very different analysis, examining the common-law heritage of the use of acquitted conduct. The dissent observed that most states do not allow the use of acquitted conduct at sentencing.[6] Moreover, the dissent noted that the American Law Institute and American Bar Association have joined the ranks of those formally opposed to the use of acquitted conduct at sentencing.[7]

The *White* dissent also criticized the majority's "simple and single-minded reliance on *Watts*" as dispositive of a Sixth Amendment claim.[8] The dissent acknowledged that the federal circuits are uniform on this issue. However, it noted that the *Booker* line of cases has cast doubt on whether *Watts* governs Sixth Amendment challenges to the use of acquitted conduct at sentencing.[9] Moreover, increasingly, federal district and court of appeals judges have questioned whether the use of acquitted conduct is constitutional under the Sixth Amendment and the Due Process Clause. They have even questioned whether it is consistent with common sense.[10]

## B. Michigan Law

In *Ewing*, four justices of this Court sanctioned the consideration of acquitted conduct by a sentencing judge when the facts were proven to the judge by a

---

[6] *Id.* at 394 (Merritt, J., dissenting).

[7] *Id.* at 395.

[8] *Id.* at 392.

[9] The dissent noted that the *Booker* Court distinguished *Watts* as irrelevant to the issue of the use of acquitted conduct generally or under the Sixth Amendment. In *Watts*, there was no "contention that the sentence enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment. The issue . . . simply was not presented." *White*, 551 F3d at 392, quoting *Booker*, 543 US at 240 (2005).

[10] *United States v Canania*, 532 F3d 764, 777 (CA 8, 2008) (Bright, J., concurring) ("In my view, the Constitution forbids judges-Guidelines or no Guidelines-from using 'acquitted conduct' to enhance a defendant's sentence because it violates his or her due process right to notice and usurps the jury's Sixth Amendment fact-finding role."); *United States v Mercado,* 474 F3d 654, 658 (CA 9, 2007) (Fletcher, J., dissenting) ("Reliance on acquitted conduct in sentencing diminishes the jury's role and dramatically undermines the protections enshrined in the Sixth Amendment."); *United States v Faust,* 456 F3d 1342, 1349 (CA 11, 2006) (Barkett, J., specially concurring) ("I strongly believe . . . that sentence enhancements based on acquitted conduct are unconstitutional under the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment."); *United States v Pimental*, 367 F Supp 2d 143, 153 (D Mass, 2005) (Gertner, J.) ("To tout the importance of the jury in deciding facts, even traditional sentencing facts, and then to ignore the fruits of its efforts makes no sense-as a matter of law or logic.").

preponderance of the evidence.[11]  The Court further held that a prior acquittal alone is not a sufficient reason to preclude the judge from taking those facts into account when sentencing a defendant for another offense.[12]  In support of this holding, Justice BRICKLEY'S lead opinion and Justice BOYLE'S opinion (joined by Chief Justice RILEY and Justice GRIFFIN) noted that "an acquittal does not necessarily mean that the defendant did not engage in criminal conduct."[13]

*Ewing* has now lain dormant for almost 20 years,[14] despite significant developments in United States Supreme Court jurisprudence since it was decided.  Just as the federal circuits have questioned the use of acquitted conduct at sentencing, I believe we should consider the continued vitality of *Ewing* in light of recent developments.

## C. Other States

It is noteworthy that some state courts consider the use of acquitted conduct at sentencing to be unconstitutional or an abuse of discretion.  These courts cite many of the same reasons mentioned by the federal judges who have objected to the practice.[15]  For example, the New Hampshire Supreme Court concluded:

> We think that the logical and legal inconsistencies associated with considering acquittals in enhancing sentencing are readily apparent. . . .
>
> . . . We think that the presumption of innocence is as much ensconced in our due process as the right to counsel, and that a criminal defendant in Mr. Cote's position is entitled to its full benefit.  This benefit is denied when a sentencing court may have used charges that have resulted in acquittals to punish the defendant.

---

[11] *Ewing*, 435 Mich at 446 (opinion by BRICKLEY, J.); 435 Mich at 473 (opinion by BOYLE, J.).  Justice ARCHER disagreed with the majority and would have held that acquitted conduct may not be used at sentencing.  435 Mich at 459 (ARCHER, J., concurring in part and dissenting in part).  Justice CAVANAGH, joined by Justice LEVIN, did not address the issue.  435 Mich at 461-462 (CAVANAGH, J., concurring).

[12] *Id*. at 451 (opinion by BRICKLEY, J.).

[13] *Id*. at 451-52; see also *id.* at 473 n 15 (opinion by BOYLE, J.).

[14] We remanded three cases to the Court of Appeals for reconsideration in light of *Ewing* in the years after the decision was released.  Other than that, *Ewing* has not been cited by this Court once since its release.

[15] *State v Marley*, 321 NC 415, 423-425 (1988); *Bishop v State*, 268 Ga 286, 295 (1997), citing *Jefferson v State,* 256 Ga 821, 827 (1987); see n 10 *supra*.

We think it disingenuous at best to uphold the presumption of innocence until proven guilty, a principle that is "axiomatic and elementary, and [whose] enforcement lies at the foundation of the administration of our criminal law," while at the same time punishing a defendant based upon charges in which that presumption has not been overcome. The presumption is not a presumption of "not guilty" or guilty only by a preponderance. It is a presumption of *innocence,* and innocence means "*absence* of guilt." BLACK'S LAW DICTIONARY 708. (Emphasis added.)[16]

These concerns are similar to those expressed by Justice ARCHER in his concurrence/dissent in *Ewing*:

Once the cloud of suspicion has been removed from a defendant as to a particular charge, the facts or circumstances surrounding such removal should not come before a subsequent sentencing trial court. In my view, there is no viable justification in support of inviting a defendant to engage in *any* kind of discussion or exchange concerning a prior exoneration of guilt. This expanded version of sentencing allocution, which, according to Justice Boyle, would require an additional and clearly belated rehashing of a matter which has been definitively resolved and disposed of, will not remove, or, in any way, diminish the eminent danger of precondemnation that would befall a defendant if this practice were allowed. The resurrection of a favorably resolved past accusation for the purpose of merely contemplating its existence would serve *only* to unfairly and unnecessarily prejudice a defendant with the probability of improperly drawn inferences of wrongful conduct.[17]

In sum, I would grant leave to appeal to revisit the use of acquitted conduct at sentencing as a general matter. I would do so to consider developments in constitutional jurisprudence since *Ewing*, the widespread criticism of the practice,[18] and the split among state courts on the issue.

---

[16] *State v Cote*, 129 NH 358, 375 (1987) (citation omitted).

[17] *Ewing*, 435 Mich at 458-459.

[18] See, e.g., Ngov, *Judicial nullification of juries: The use of acquitted conduct at sentencing*, 76 Tenn L R 235, 261 (2009) ("A paradox is thus presented. *Apprendi* [*v New Jersey*, 530 US 466 (2000)] and its progeny, including *Booker*, have elevated the role of the jury verdict by circumscribing a defendant's sentence to the relevant statutory maximum authorized by a jury; yet, the jury's verdict is not heeded when it specifically withholds authorization. Stated differently, the jury is essentially ignored when it disagrees with the prosecution. This outcome is nonsensical and in contravention of the thrust of recent Supreme Court jurisprudence.").

### III. The Use of Defendant's Acquittal in This Case

In *People v Grimmett*, this Court concluded that a sentencing judge may not make an "independent finding of defendant's guilt" on another charge.[19] *Ewing* and later Court of Appeals cases, on the other hand, have allowed sentencing judges to impose sentences using conduct underlying acquitted charges.[20] The dividing line between these two considerations is unclear, as the *Ewing* Court noted.[21]

Here, defendant was acquitted of the second CSC charge, yet the trial judge concluded by a preponderance of the evidence that defendant committed that CSC. Given the trial judge's language, it appears the sentencing departure here was based on an independent finding of guilt, *not* acquitted conduct. At the resentencing hearing, the judge stated "[t]he court made a finding previously that the second sexual act that [sic] actually occurred and the court found that by a preponderance of the evidence."[22]

Also of particular significance to this case is the limiting language in Justice BRICKLEY'S *Ewing* opinion. Justice BRICKLEY provided the crucial fourth vote in favor of allowing acquitted conduct to be used in sentencing. He explained

---

[19]*People v Grimmett*, 388 Mich 590, 608 (1972), overruled on other grounds by *People v White*, 390 Mich 245 (1973), see also *People v Fleming*, 428 Mich 408, 417-418 (1987).

[20] *People v Compagnari*, 233 Mich App 233, 236 (1998).

[21] *Ewing*, 435 Mich at 471-472 (opinion by BOYLE, J.) (noting that "[t]he difficulty in drawing a distinction between *People v Lee* [391 Mich 618 (1974)] [the trial court may "notice the existence of pending charges"] and *Grimmett* [the trial court may not "use unsupported assumption of guilt of other crimes as a factor" at sentencing] has created a lack of consistency in the Court of Appeals decisions on this issue. . . . The confusion in the lower courts regarding whether and under what circumstances a court may consider other criminal activity of a defendant which has not resulted in a conviction or charge necessitates some action by this Court to clarify the rule. We would clarify *Grimmett* and hold, in line with the majority of jurisdictions, that any circumstance which aids the sentencing court's construction of a more complete and accurate picture of a defendant's background, history, or behavior is properly considered in individualizing the sentence . . . .").

However, because Justice BOYLE's opinion in *Ewing* garnered only three votes, this confusion was not dispelled by *Ewing*'s release.

[22] Transcript from the March 18, 2008 sentencing hearing. The previous finding the court referred to was from defendant's original sentencing, when the court stated "[t]he court finds by a preponderance of the evidence that he [defendant] did commit the offense." Transcript from the October 19, 2006 sentencing hearing.

that, in the context of prior acquittals, the defendant must be afforded the opportunity to "test the accuracy" of the underlying facts of that acquittal when they are considered during sentencing.[23]

Considering the record here, there is no indication that the judge allowed the defendant to "test the accuracy" of the facts underlying the acquitted conduct used to enhance his sentence, as *Ewing* requires. The fact that defendant did get a chance to "test the accuracy" of this finding during the trial on the additional CSC II count is insufficient to give meaning to the holding in *Ewing*. He had tested the accuracy of those facts and succeeded; the jury, by acquitting him of that count, determined that he did not commit the offense. When a judge then finds by a preponderance of the evidence that the defendant did commit the crime, how is the defendant to again "test the accuracy" of those facts? Is the defendant supposed to make his argument at sentencing? Should an evidentiary hearing be held? Is the defendant not then required to defend against the charge twice?

These inconsistencies, coupled with the blurred line between what *Ewing* allows and what *Grimmett* prohibits, illuminate the problems inherent in using facts underlying acquitted conduct at sentencing. Particularly, this practice exposes the difficulty a defendant faces in testing the accuracy of these facts.

## IV. Conclusion

For these reasons, I think this case raises several jurisprudentially significant issues. I would grant defendant's application for leave to appeal.

---

[23] *Ewing*, 435 Mich at 454.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 15, 2010

_Corbin R. Davis_
Clerk

p0112