# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

AARON ANTWAUN ROBINSON,

          Defendant-Appellant.

UNPUBLISHED
December 28, 2017

No. 335193
Genesee Circuit Court
LC No. 11-029956-FC

Before: MURRAY, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right from his sentences, following remand by this Court, for his jury-trial convictions of first-degree home invasion, MCL 750.110a(2), safe breaking, MCL 750.531, larceny of a firearm, MCL 750.537b, receiving and concealing a firearm, MCL 750.353b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] We affirm.

Defendant was originally sentenced on October 28, 2013 to 144 to 240 months' imprisonment for the first-degree home invasion conviction, 140 to 360 months' imprisonment for the safe breaking conviction, 13 to 60 months' imprisonment for the larceny of a firearm conviction, 24 to 120 months' imprisonment for the receiving and concealing a firearm conviction, and the mandatory two year term of imprisonment for the felony-firearm conviction.

Defendant appealed to this Court, claiming, as relevant to this appeal, that the trial court had incorrectly scored various offense variables (OVs), and that the trial court failed to articulate a substantial and compelling reason to depart from the minimum sentence guidelines range when departing upward for defendant's first-degree home invasion and safe breaking convictions. See *People v Robinson*, unpublished opinion per curiam of the Court of Appeals, issued February 17, 2015 (Docket No. 319226), p 10. This Court determined that although defendant's OVs were properly scored, the trial court did not "specifically state how the extent of [defendant's] departure [sentence] was proportionate." Accordingly, this matter was remanded to the trial

---

[1] The jury acquitted defendant of first-degree felony murder, MCL 750.316(b), second-degree murder, MCL 750.317, carjacking, MCL 750.529a, and armed robbery, MCL 750.529.

court "so that the trial court [could] justify the extent of the departure from the sentencing guidelines." *Id*. at 17. On remand, following the Michigan Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and this Court's decision in *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015),[2] the trial articulated its reasons for concluding that defendant's upward departure sentences for first-degree home invasion and safe breaking were proportionate and therefore reasonable.[3]

Defendant now argues in his brief on appeal and in his Standard 4 brief that his departure sentences for his first-degree home invasion and safe breaking convictions are disproportionate and therefore unreasonable. We disagree.

This Court reviews a sentence that departs from the applicable minimum sentencing guideline range for reasonableness. *Lockridge*, 498 Mich at 365. This Court reviews the reasonableness of a departure sentence for an abuse of the trial court's discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017); *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). A trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). The trial court also abuses its discretion by "failing to provide adequate reasons" for the extent of any departure sentence imposed. *Steanhouse*, 500 Mich at 476.

A defendant's sentence is reasonable if it accords with the principle of proportionality found in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *Steanhouse*, 500 Mich at 471. This Court will evaluate whether the trial court imposed a sentence that was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460. "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. at 472, citing *Milbourn*, 435 Mich at 661.

On remand, in articulating the basis for departing upward from the minimum sentence guideline range for the sentences at issue in this appeal, the trial court considered several factors that were not already taken into account by the sentencing guidelines. *People v Dixon-Bey*, ___ Mich App ___, ___; ____ NW2d ____ (2017) (Docket No. 331499); slip op at 18-19. For example, the trial court observed that defendant and his accomplice, Ryan Deville, were familiar with the elderly victim in this case, Lonnie Thomas, Sr., a former Genesee County sheriff's deputy, as defendant and Thomas were former neighbors. Similarly, the trial court repeatedly

---

[2] *People v Steanhouse* was affirmed in part and reversed in part by the Michigan Supreme Court. 500 Mich 453 (2017).

[3] For defendant's first-degree home invasion conviction, the minimum sentence guidelines range was 57 to 95 months' imprisonment. Instead, the trial court sentenced defendant to 144 to 240 months' imprisonment. For defendant's safe breaking conviction, the minimum sentence guidelines range was 43 to 86 months' imprisonment. The trial court sentenced defendant to 140 to 360 months' imprisonment.

referred to defendant's manipulative, devious and cunning behavior which he used in scheming to commit the offenses that led to Thomas's death.[4] For example, the trial court observed that defendant and Deville had actively plotted their participation in these offenses, and had used subterfuge, offering to cut his lawn, to visit Thomas on a prior occasion to ascertain what property of value Thomas had in his home. The record reflects that the trial court was particularly disturbed by defendant's behavior in the time following Thomas's death. Specifically, the trial court noted that defendant drove around the community "in broad daylight[,]" along with his girlfriend in Thomas's vehicle, which still contained Thomas's personal property, and that defendant attended a party, went to the movies and spent time in a hotel with his girlfriend. In the trial court's words, it was troubling that defendant was "having a good time[ ]" in the period immediately following his participation in these crimes that led to Thomas's death. Put another way, it is abundantly clear to us that defendant's behavior during the commission of these offenses, and in the time thereafter, showing his callous and inhumane disregard for Thomas's life, was a significant factor in the trial court's decision to depart from the minimum sentence guidelines range. On remand, the trial court also considered the heinous circumstances of the commission of these offenses, where following Thomas's death, defendant and Deville waited until it was dark to leave Thomas's home, bleach was poured on Thomas's body to keep it from omitting an offensive odor, and the air conditioning in Thomas's home was turned up, presumably to avoid the detection of these crimes.

The trial court also noted, following defendant's allocution during the September 12, 2016 sentencing hearing, that defendant showed absolutely no remorse for the role that he played in the events leading to Thomas's death. Contrary to defendant's assertion on appeal, we are of the view that the trial court properly considered defendant's lack of remorse. *Steanhouse*, 313 Mich App at 46. We have reviewed the trial court's comments pertinent to this issue, and they do not reflect that defendant was impermissibly sentenced more harshly for refusing to admit his guilt. See *People v Yennior*, 399 Mich 892; 282 NW2d 920 (1977) (recognizing that a trial court is not permitted "even in part" to render a sentence on the basis of a defendant's refusal to acknowledge guilt). Instead, a review of the trial court's comments in context reflects that the trial court was troubled by defendant's defiance and his blaming of others for his own actions leading to his incarceration, as well as his failure to show any remorse for his admitted participation in the sequence of events that led to Thomas's death. Therefore, on the basis of the foregoing, where defendant's sentences for his convictions of first-degree home invasion and safe breaking are proportionate to the seriousness of these grave offenses that led to Thomas's death, *Steanhouse*, 500 Mich at 472, we are of the view that the trial court properly exercised its discretion in imposing departure sentences.

Defendant further claims that the trial court improperly characterized defendant as "the mastermind" of the crimes that led to Thomas's death and considered this in departing upward from the minimum sentence guidelines range. We acknowledge that defendant was assessed 10

---

[4] We note that any reference in this opinion to defendant's participation in the events and circumstances leading to Thomas's death are limited to the crimes of which the jury convicted him.

points under OV 14 for acting as a leader in the commission of the crimes. MCL 777.44(1)(a). However, it is apparent from our review of the September 12, 2016 sentencing hearing transcript that in referring to defendant's leadership role, the trial court determined that OV 14 did not give adequate weight to defendant's significant role in plotting these crimes, including manipulating Thomas, his former elderly neighbor, and engaging in subterfuge to gain access to Thomas's home. We discern no error in the trial court's conclusion in this regard. *Dixon-Bey*, ___ Mich App at ___; slip op at 18, 19 (recognizing that factors "considered by the guidelines but given inadequate weight[ ]" are properly considered in "determining whether a departure sentence is more proportionate than a sentence within the guidelines range.")

Defendant also asserts that the trial court on remand erred in relying upon its belief that defendant was guilty of offenses of which the jury had acquitted him in articulating the reasons for imposing departure sentences. However, while a trial court "may not make an independent finding of guilt with respect to a crime for which a defendant has been acquitted, and then sentence the defendant on the basis of that finding, the court in fashioning an appropriate sentence may consider the evidence offered at trial[.]" *People v Compagnari*, 233 Mich App 233, 236; 590 NW2d 302 (1998) (citation omitted). Such evidence may include "other criminal activities established even though the defendant was acquitted of the charges[.]" *Id.* (Citation omitted.) While the trial court did state its disagreement with the jury's verdict, our review of the record confirms that the trial court considered all of the evidence offered at trial in formulating and justifying its departure sentences, and there is no indication from the record that the trial court sentenced defendant on the basis of independent conclusions of guilt for crimes of which the jury acquitted defendant.[5]

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

---

[5] While defendant raises additional issues in his brief on appeal and Standard 4 brief on appeal, we note that this Court remanded this case to the trial court for the very limited purpose of allowing the trial court to articulate its reasons for the extent of its departure from the recommended guidelines range. See, e.g. *People v Russell*, 297 Mich App 707, 714; 825 NW2d 623 (2012) (recognizing that where "an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order.") This Court has also held that "proceedings on remand are limited to the scope of the remand order." *People v Canter*, 197 Mich App 550, 567; 496 NW2d 336 (1992).