# Order

Michigan Supreme Court
Lansing, Michigan

October 27, 2006

131712 & (44)

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,
      Cross-Appellee,

v

HUGH ROBERT HEDEEN, JR.,
      Defendant-Appellee,
      Cross-Appellant.

SC: 131712
COA: 259798
St Clair CC: 03-001361-FH

_____/

On order of the Court, the application for leave to appeal the June 6, 2006 judgment of the Court of Appeals and the application for leave to appeal as cross-appellant are considered, and they are DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

WEAVER, J., dissents and states as follows:

I dissent from the majority's order denying the prosecutor's application for leave to appeal. I would reverse the Court of Appeals majority's ruling and, for the reasons stated by Court of Appeals dissenting Judge Fort Hood, I would reinstate the sentence imposed by the trial court.

The defendant in this case was 32 years old when he began having sexual relations with the 15-year-old victim. The presentence report indicates that the defendant met the victim in June 2002 and that they started engaging in sexual relations in August 2002. The victim told the police that defendant knew that she was 15 and that defendant told her he would take care of her. Evidently the victim's home life was unstable. Her parents were divorced and her father had been out of the picture for some time. The victim's mother was inattentive and, when the mother's boyfriend kicked the victim out of the house, the victim began living with defendant in his home.

Defendant admitted that he knew the victim was 15, but that he had sexual intercourse with her anyway, approximately every other week, from August 2002 until April 2003, a period of nine months. The victim told the police that because defendant

did not use a condom, she became impregnated by defendant first in September 2002, and then again in February 2003. Both times, the victim endured abortions, yet defendant continued to engage in sexual relations with the victim.

Defendant pleaded guilty to one count of third-degree criminal sexual conduct (CSC III), MCL 750.520d (1)(a), in exchange for dismissal of two additional counts of CSC III. In departing from the sentencing guidelines minimum range of 24 to 40 months, and instead sentencing defendant to the highest minimum term possible, ten to 15 years, the trial court made the following observations:

> [Y] ou know, Mr. Hedeen is 32 years old and this child is only 15 years old. She really was unprotected. She didn't have any protection from anybody. I mean she didn't have any protection from her parent, her mom, her guardian, the person that was in charge of her, and she certainly didn't have any protection from Mr. Hedeen.

> \* \* \*

> This child was 15 years at the time. The crime has affected her greatly. Her behavior has changed dramatically. She has been, this was the thing, I made a note to myself. She became pregnant two times by this Defendant and then aborted two times. She aborted a fetus two times. I'm going to try not to cry, but I think this is gross. This is beyond, this is animalistic.

> \* \* \*

> But this is outside of any box that I've, I've ever been involved with, and it's whatever 30 years or 40 years where, where a 32 year old impregnates a 15 year old who becomes pregnant and aborts that child and then lo and behold a second time. That is certainly a pattern of behavior that is just aberrant, and I'm not sure the guidelines take that into consideration.

> Well, those are the reasons that I'm going to impose a sentence that will represent two-thirds of the maximum 15 years, which would be from ten years to 15 years in prison. That's the sentence.[1]

Defendant appealed his sentence, and a majority of the Court of Appeals reversed, determining that while the trial court had a "substantial and compelling" reason for the upward sentencing departure in accord with *People v Babcock,* 469 Mich 247, 264-265 (2003), the trial court had not satisfied the principle of proportionality: "whether the sentence is proportionate to the seriousness of the defendant's conduct and to the defendant in light of his criminal record …." *Id.* at 262. In so holding, the majority

---

[1] Trial court sentencing transcript, September 15, 2003, pp 10-11, 15.

noted that because defendant had no prior felony convictions, and his last misdemeanor conviction occurred in 1991, defendant's prior record did not support the departure. On this basis, a majority of the Court of Appeals reversed and remanded for resentencing.

Judge Fort Hood dissented from the majority's conclusion that the principle of proportionality had not been satisfied under *Babcock*. Because I agree with Judge Fort Hood's dissent, I adopt it as the basis for my dissent from the majority's decision to deny the prosecutor's application for leave to appeal the Court of Appeals majority's order reversing and remanding for resentencing:

> Fort Hood, J. (*concurring in part and dissenting in part*).
>
> I concur in the majority opinion's conclusions that: (1) substantial and compelling reasons existed to justify a departure from the guidelines; (2) the record contains no indication that the sentence imposed was the result of partiality based on the sentencing court's religious beliefs; and (3) defendant's scoring and sentence did not violate Michigan sentencing laws. However, I respectfully dissent from the majority's conclusion that the sentence violates the principle of proportionality.
>
> As an initial matter, it should be noted that defendant did not allege that the principle of proportionality was violated by imposing the ten to fifteen year sentence for third-degree criminal sexual conduct, MCL 750.520d(1)(a), in his appellate brief. When a defendant fails to argue how his sentence for the convicted offense is disproportionate, the issue is waived. *People v Hill*, 221 Mich App 391, 397; 561 NW2d 862 (1997).
>
> Moreover, appellate review of the sentence is not reviewed de novo, but is limited. The structure of the legislative sentencing guidelines and the appellate system itself recognize that "the trial court is optimally situated to understand a criminal case and to craft an appropriate sentence for one convicted in such a case." *People v Babcock*, 469 Mich 247, 267; 666 NW2d 231 (2003). Therefore, the trial court may depart from the sentencing range when a substantial and compelling reason exists for the departure. *Id*. The decision to depart may be based on an offense characteristic or an offender characteristic previously incorporated into the guidelines if the sentencing court finds that the characteristic has been given inadequate or disproportionate weight. *Id*. at 267-268; see also MCL 769.34(3)(b).
>
> The Legislature gave the sentencing court the responsibility of making the difficult determination of rendering the appropriate sentence "largely on the basis of what has taken place in its direct observation." *Babcock, supra* at 268. "Because of the trial court's familiarity with the

facts and its experience in sentencing, the trial court is better situated than the appellate court to determine whether a departure is warranted in a particular case." *Id*. Review de novo would allow appellate judges to substitute their own judgment for that of the trial court. *Id*. Therefore, an abuse of discretion standard is applied to sentencing decisions, which acknowledges that there will be no single correct outcome because there may be more than one reasonable and principled outcomes [sic]. *Id*. at 269. "When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." *Id*. That is, when the sentencing court chooses an outcome falling outside the principled range of outcomes, an abuse of discretion occurs. *Id*.

On this record, I cannot conclude that the trial court abused its discretion. That is, the sentence imposed was within the range of principled outcomes. The victim in this case was particularly vulnerable because her mother essentially abandoned her. Although defendant did not allocute at sentencing, his defense counsel opined that the victim was "left in his lap" when her mother's boyfriend threw her out of the family home. The victim's family instability gave defendant unlimited access to the victim, and instead of calling the appropriate authorities or attempting to locate the victim's birth father, he preyed upon her despite knowing her age. After the victim had one abortion, she reported that defendant was angry with her, yet he continued to engage in unprotected sexual activities with her. Based on the unique ability of the trial court to assess the factual information presented in the lower court, I cannot conclude that an abuse of discretion occurred. Therefore, I would affirm the sentence.[2]

Notwithstanding his fairly unremarkable prior criminal record, this 32-year-old man should not have taken advantage of this 15-year-old girl. The fact that he would continue to engage in repeated sexual relations when he knew she was only 15, and after she endured, not just one, but two abortions, is indicative of that kind of aberrant criminal behavior that "'keenly' or 'irresistibly' grab[s] our attention"[3] and that therefore justifies a departure from the sentencing guidelines.

The Court of Appeals majority's conclusion that the sentence was disproportionate because defendant could have committed third-degree criminal sexual conduct in a more abhorrent, deviant fashion produces no reliable calculus for a trial

---

[2] *People v Hedeen,* unpublished opinion per curiam of the Court of Appeals, issued June 6, 2006 (Docket No. 259798), slip op pp 1-2.

[3] *Babcock* at 257, quoting *People v Fields,* 448 Mich 58, 67 (1995).

court to know whether a sentence properly expresses community outrage or whether it offends proportionality. For example, if defendant had impregnated the victim a third time, would three pregnancies warrant the ten-year minimum sentence? Perhaps not, because defendant could have impregnated the victim a fourth time, or could have engaged in sexual relations with the victim with more frequency. The Court of Appeals majority failed to identify what level of aberrant criminal behavior would have merited the minimum sentence imposed by the trial court, which otherwise articulated substantial and compelling reasons to depart upwardly.

For these reasons, I would reverse the Court of Appeals majority decision and reinstate the trial court's original sentence of ten to 15 years.

CORRIGAN and YOUNG, JJ., join the statement of WEAVER, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

October 27, 2006

_Corbin R. Davis_
Clerk

t1024